**HARTFORD FIRE INS. CO. v. PIERCE**

[127 N.C. App. 123 (1997)]

HARTFORD FIRE INSURANCE COMPANY, PLAINTIFF V. LARRY N. PIERCE AND
CHARLES W. SETLIFF, DEFENDANTS

No. COA 96-899

(Filed 5 August 1997)

**Insurance § 485 (NCI4th)—handgun transported in vehicle—
accidental firing—injury of passenger—use of vehicle—
coverage by liability insurance**

An automobile liability policy covered injuries sustained by a
passenger in a vehicle driven by the insured's employee when a
handgun that the employee routinely transported in the vehicle
and stored in the glove box of the vehicle accidentally fired while
the employee was removing it from its holster since transporta-
tion of the handgun was an ordinary and customary "use" of the
vehicle, and there was thus a causal connection between "use" of
the vehicle and the accident. This result is not changed by the fact
that the insured's employee was intoxicated when the accident
occurred.

Judge MARTIN, John C., dissenting.

Appeal by defendant Larry N. Pierce from summary judg-
ment entered 9 May 1996 by Judge Julius A. Rousseau, Jr., in
Guilford County Superior Court. Heard in the Court of Appeals 2 April
1997.

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnson, Jr., for
plaintiff-appellee.*

*Donaldson & Horsley, P.A., by Jeffrey K. Peraldo, for defendant-
appellant.*

McGEE, Judge.

Plaintiff Hartford Fire Insurance Company filed a complaint seek-
ing declaratory judgment to determine its obligations under an auto-
mobile liability insurance policy issued to CMS Trading Company,
Inc., the employer of defendant Charles W. Setliff. Setliff accidentally
shot and injured defendant Larry N. Pierce while Setliff was a pas-
senger in a vehicle owned by CMS, which was being driven by defend-
ant Pierce. The CMS vehicle was insured under a policy issued by
plaintiff. In its complaint, plaintiff asserts that its policy does not
cover the injuries sustained by Pierce. Pierce filed a motion for sum-

mary judgment, arguing there is no genuine issue as to any material fact and that he is entitled to judgment in his favor as a matter of law. The trial court found no genuine issue of material fact and ruled plaintiff is entitled to summary judgment as a matter of law.

"We note at the outset that summary judgment can be appropriate in an action for a declaratory judgment where there is no genuine issue of material fact and one of the parties is entitled to judgment as a matter of law." *N.C. Association of ABC Boards v. Hunt*, 76 N.C. App. 290, 292, 332 S.E.2d 693, 694 (1985). "Summary judgment in favor of the non-movant is appropriate when the evidence presented demonstrates that no material issues of fact are in dispute, and the non-movant is entitled to entry of judgment as a matter of law." *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 212, 258 S.E.2d 444, 447-48 (1979). In this case summary judgment for the non-movant plaintiff is not appropriate; however, summary judgment is appropriate for defendant Pierce.

Plaintiff's policy covers "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " N.C. Gen. Stat. § 20-279.21(b)(2) (1993) requires that such policies provide coverage for "persons in lawful possession [of the insured vehicle] against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle."

In *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 539-40, 350 S.E.2d 66, 69 (1986), our Supreme Court stated the test for determining when coverage is provided:

> There must be a causal connection between the use and the injury. This causal connection may be shown to be an injury which is the natural and reasonable incident or consequence of the use, though not foreseen or expected, but the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile. (Citation omitted).

In short, the test for determining whether an automobile liability policy provides coverage for an accident is not whether the

automobile was a proximate cause of the accident. Instead, the test is whether there is a causal connection between the use of the automobile and the accident.

(Citations omitted).

In *State Capital*, a rifle had been placed in the storage area behind the seat in a pickup truck and had accidentally discharged when the insured started to remove it from the storage area. When the rifle fired, a bullet struck a man standing near the truck. The *State Capital* court held the insured's automobile liability policy covered the victim's injuries. In finding a causal connection between the use of the vehicle and the accident, the *State Capital* court noted that the insured customarily transported a firearm and stored it in the storage area behind the seat. Under those facts, the *State Capital* court found that transportation of the firearm was an ordinary and customary use of the motor vehicle. Similarly, in this case, the insured's employee Setliff routinely transported a handgun, storing it in the glove box of his truck. The gun accidentally fired while Setliff was removing it from its holster. We conclude the trial court should have entered summary judgment in favor of defendant Pierce.

Our decision is further supported by *Reliance Insurance Co. v. Walker*, 33 N.C. App. 15, 234 S.E.2d 206 (1977). In *Reliance*, a gun stored on a gun rack in a pickup truck accidently fired, injuring a man standing nearby. The *Reliance* court noted that the gun rack was mounted in the truck's cab and had been frequently used to transport rifles. The *Reliance* court concluded,

Clearly, the transportation of guns was one of the uses to which the truck had been put. Thus, the shooting was a "natural and reasonable incident or consequence of the use" of the truck and was not the result of something "wholly disassociated from, independent of, and remote from" the truck's normal use.

*Reliance* at 22, 234 S.E.2d at 211.

Plaintiff directs this Court's attention to five other North Carolina cases involving the question of insurance coverage in instances of gunshot injuries associated with motor vehicles. Plaintiff asserts these cases support a judgment in plaintiff's favor. We do not agree.

Three of the cases cited by plaintiff involve deliberate, not accidental, shootings and thus are inapplicable to this case. Plaintiff also cites *Nationwide Mutual Insurance Company v. Rochelle*, North

**HARTFORD FIRE INS. CO. v. PIERCE**

[127 N.C. App. 123 (1997)]

Carolina Court of Appeals, No. 913SC977, an unpublished opinion by this Court. Under N.C.R. App. P. 30(e)(3),

> [a] decision without a published opinion is authority only in the case in which such decision is rendered and should not be cited in any other case in any court for any purpose, nor should any court consider any such decision for any purpose except in the case in which such decision is rendered.

Even if *Nationwide* had precedential value, however, it would not apply to this case. In *Nationwide*, a hunter sitting in his truck shot and killed a man he had mistaken for a deer. The *Nationwide* court denied insurance coverage, observing, "Rochelle deliberately held the rifle, aimed it and purposely fired it while sitting in the parked truck. No transportation was occurring when he injured intestate."

Plaintiff further cites *Raines v. Insurance Co.*, 9 N.C. App. 27, 175 S.E.2d 299 (1970), but *Raines*, too, is inapplicable to this case. In *Raines*, the car was parked, the motor was off and one door was open. *Nationwide* and *Raines* do not address whether the vehicle at issue was routinely used to transport a weapon. The *Reliance* court noted that fact in rejecting *Raines* as controlling authority, and we do likewise. "There was nothing in *Raines* to indicate that the car was or ever had been used for transportation of guns." *Reliance*, 33 N.C. App. at 23, 234 S.E.2d at 211.

Plaintiff also points out that Setliff was intoxicated at the time the gun accidentally fired. Setliff's intoxication does not change the fundamental facts that Setliff was employed by the insured, he was riding in a covered vehicle and he routinely transported a handgun that he deemed necessary for his protection.

Under such circumstances, we follow established rules of construction for interpreting the provisions of insurance policies.

> Provisions . . . "which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." It is also well settled that when an insurance policy contains no ambiguity, it shall be construed according to its terms, but when ambiguity exists the policy shall be construed in favor of coverage and against the insurer who selected its language.

*N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 707, 412 S.E.2d 318, 324-25 (1992) (citations omitted).

For the reasons stated, we reverse summary judgment for plaintiff and remand with direction to enter summary judgment for defendant Larry N. Pierce on the issue of coverage.

Reversed and remanded.

Judge COZORT concurs.

Judge MARTIN, John C., dissents.

Judge Cozort participated in this opinion prior to his resignation 31 July 1997.

Judge MARTIN, John C., dissenting.

I respectfully dissent. Citing *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986), the majority concludes there was a casual connection between the use of the CMS vehicle and defendant Pierce's injury because (1) Setliff routinely carried a pistol for his personal protection in the glove box of the CMS company truck, and (2) Pierce's injury occurred when "[t]he gun accidentally fired while Setliff was removing it from its holster." However, I believe a close reading of the *State Capital* decision and the facts in this case indicates a result different from the majority's holding.

In *State Capital,* two men had gone hunting in a truck belonging to one of them. They stored their hunting rifles and shotgun in a gun rack and in a storage area behind the seat. One of the men was injured when a rifle discharged as his companion, having spotted a deer, attempted to remove the rifle from the storage space. The Supreme Court found a casual connection between the use of the truck and the injury.

The transportation of firearms is an ordinary and customary use of a motor vehicle, especially pickup trucks. In addition, use of an automobile includes its loading and unloading. In the case *sub judice,* Anderson transported his .30-30 rifle in his pickup truck; as he attempted to unload the rifle from the truck, it discharged, causing injury to McKinnon. Since the transportation and unloading of firearms are ordinary and customary uses of a motor vehicle, and the injury-causing accident here resulted from the unloading of a transported rifle, such injuries were a natural and

reasonable incident or consequence of the use of the motor vehicle (citation omitted).

The shooting in the case *sub judice* was an incident or consequence of the use of an automobile and not the result of some independent act disassociated from the use of an automobile.

*State Capital,* at 540, 350 S.E.2d at 69-70.

In the present case, the facts establish no such causal connection between the use of the CMS vehicle and the injury. Although Setliff routinely carried a pistol in the vehicle for his own protection, the evidence establishes that the injury occurred as a result of his reckless conduct in engaging in horseplay with the firearm, rather than as a reasonable consequence of the use of the truck. Contrary to the majority's recitation, there was no competent evidence before the trial court that the pistol discharged as it was being removed from its holster. Defendant Pierce's affidavit states that:

Setliff asked me if I wanted to see a pistol that he apparently had removed from the glove box of the CMS truck. I could hear him cocking the gun repeatedly. Because he was so drunk, I asked him to stop playing with the gun and to put the gun away. The gun then discharged and I was shot in the leg.

Setliff acknowledged, at his deposition, that he was so intoxicated at the time that he does not remember how the pistol came to be in his hand or any of the events surrounding its discharge. In my view, horseplay involving firearms is neither an ordinary nor customary use of a motor vehicle and, therefore, is not reasonably incidental to the use of a motor vehicle within the contemplation of either party to an automobile liability insurance policy or within the contemplation of the General Assembly in enacting G.S. § 20-279.21(b)(2), the compulsory motor vehicle liability insurance statute. Thus, I would hold that Pierce's injury was not a reasonable consequence of the use of the CMS vehicle, but resulted from Setliff's reckless act "wholly disassociated" from the truck's normal use; as such it was not covered by plaintiff's automobile liability insurance policy. I vote to affirm the judgment of the trial court.