Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2020 NCBC 47.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

          Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

          Defendants.

**ORDER AND OPINION ON MOTION
OF DEFENDANTS ASSOCIATED
ELECTRIC & GAS INSURANCE
SERVICES LIMITED, BERKSHIRE
HATHAWAY DIRECT INSURANCE
COMPANY (F/K/A AMERICAN
CENTENNIAL INSURANCE
COMPANY), AND TIG INSURANCE
COMPANY, AS SUCCESSOR TO
RANGER INSURANCE COMPANY,
FOR PARTIAL SUMMARY
JUDGMENT REGARDING
COVERAGE FOR THE RIVERBEND
STEAM STATION**

1.    **THIS MATTER** is before the Court on the Motion of Defendants Associated Electric & Gas Insurance Services Limited ("AEGIS"), Berkshire Hathaway Direct Insurance Company (f/k/a American Centennial Insurance Company ("ACI")), and TIG Insurance Company, as successor to Ranger Insurance Company ("Ranger"), (collectively, the "AEGIS Defendants") for Partial Summary Judgment Regarding Coverage for the Riverbend Steam Station (the "Motion") filed November 27, 2019.[1] (ECF No. 588.)

2.    Having considered the Motion, the briefs and related materials submitted in support of and in opposition to the Motion, the arguments of counsel at the hearing

---

[1] Defendants The Continental Insurance Company for London Guarantee and Accident Company of New York ("Continental") and Arrowood Indemnity Company (f/k/a Royal Indemnity Company) ("Arrowood") separately joined the Motion. (ECF Nos. 609, 613.) Arrowood and Continental separately joined the AEGIS Defendants' reply in further support of the Motion. (ECF Nos. 720–21.)

on the Motion, and other appropriate matters of record, the Court **DENIES** the

Motion and **GRANTS** summary judgment for Duke on the issue presented on the

Motion for the reasons set forth below.

*Pillsbury Winthrop Shaw Pittman LLP, by Mark J. Plumer, Matthew G. Jeweler, Barry Fleishman, Aaron D. Coombs, William C. Miller, Jeffrey W. Mikoni, and W. Kirk Gandy, and Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

*Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, Steven M. Zuckermann, Greg E. Mann, and Gregory J. Klubok, and Goldberg Segalla, by David G. Harris, II and David L. Brown, for Defendants Associated Electric and Gas Insurance Services Limited, Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*

*Hinkhouse Williams Walsh LLP, by William C. Joern and Richard McDermott, and Pope Aylward Sweeney & Stephenson, LLP, by Robert Aylward, for Defendant Continental Insurance Company.*

*Freeborn & Peters LLP, by Bruce M. Engel, Patrick Frye, and Ryan G. Rudich, and Bradley Arant Boult Cummings LLP, by Matthew S. DeAntonio and Corby C. Anderson, for Defendant Arrowood Indemnity Company.*

*Squire Patton Boggs (US) LLP, by Paul Kalish, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, and Fireman's Fund Insurance Company.*

*Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke, for Defendant Allstate Insurance Company.*

*Jackson & Campbell PC, by Erin N. McGonagle, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

*Hogan Lovells US LLP, by Alexander B. Bowerman, for Defendant Assurances Générales de France.*

*Clausen Miller P.C., by Ilene Korey, for Defendant Old Republic Insurance Company.*

*Karbal Cohen Economou Silk Dunne LLC, by Dena Economou, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

*White and Williams, LLP, by Shane Heskin, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*

*Kennedys CMK LLP, by John D. LaBarbera, for Defendant United States Fire Insurance Company.*

*Saiber LLC, by Michael J. Balch, for Defendant General Reinsurance Corporation.*

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     This action focuses on whether Defendants—all insurers who issued excess level insurance policies to Plaintiffs Duke Energy Carolinas, LLC ("DEC") (formerly Duke Power Company ("Duke Power")) and Duke Energy Progress, LLC (formerly Carolina Power & Light Company ("CP&L")) (collectively, "Duke")—are obligated to compensate Duke for alleged liabilities linked to coal combustion residuals ("CCRs"), i.e., coal ash, at fifteen Duke-owned power plants in North and South Carolina. This Motion focuses on one such facility, the Riverbend Steam Station ("Riverbend"), near Mount Holly, Gaston County, North Carolina.

4.     The Court does not make findings of fact on motions for summary judgment; rather, the Court summarizes material facts it considers to be uncontested. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 165 (1975).

5. DEC owns the Riverbend facility, which operated from 1929 to 2013.[2] Coal ash generated from Riverbend was deposited into two ash ponds, or basins, for disposal. (Mann Aff. Ex. A, at DUKE_CAIR_000253023; *see also* First Am. Compl ¶ 84, ECF No. 232.)

6. Following the February 2014 spill of coal ash into the Dan River at Duke's Dan River Steam Station in Rockingham County, the North Carolina General Assembly passed the Coal Ash Management Act ("CAMA"), N.C.G.S. § 130A-309.200 *et seq.*, in September 2014. S.L. 2014-122, 2014 N.C. Sess. Laws 122; (Mann Aff. Ex. A, at DUKE_CAIR_000252978, 000253003; Mann Aff. Ex. E S.L. 2014-122 (S.B. 729), ECF No. 591.5). Through CAMA, the North Carolina General Assembly required Duke to take certain remedial actions at various specifically-identified power plants. S.L. 2014-122 § 3(b); (*see also* First Am. Compl. ¶ 49). Of particular relevance here, CAMA required Duke to take remedial action to "dewater and remove all CCRs from impoundments" at Riverbend[3] and ultimately to close.[4]

---

[2] (*See* Aff. Greg E. Mann Supp. Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station [hereinafter "Mann Aff."] Ex. A Excerpts Joint Factual Statement, *United States v. Duke Energy Carolinas, LLC, et al.* (E.D.N.C. May 14, 2015), Case Nos. 5:15-CR-62-H, 5:15-CR67-H, & 5:15-CR-68-H, at DUKE_CAIR_000253023, ECF No. 591.1; Mann Aff. Ex. B Letter Duke Energy to N.C. Department Environment & Natural Resources, dated May 4, 2015, at NCDENR0088379, ECF No. 591.2.)

[3] (*See* Mem. Law Supp. Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station 4, 11 [hereinafter "AEGIS Defs.' Supp. Br."], ECF No. 589; *see* S.L. 2014-122 §§ 3(b)(2), 3(c)(2); *see also* First Am. Compl. ¶ 49.)

[4] CAMA was amended to require ash ponds like the one at Riverbend to close by December 31, 2019. *See* N.C.G.S. § 130A-309.214.

7.   The AEGIS Defendants seek dismissal of Duke's Riverbend-based claims, contending that Duke's liability at Riverbend under CAMA falls outside the coverage provided under the insurance policies the AEGIS Defendants issued to Duke Power from 1979 to 1986 (the "Policies").[5]

8.   Under the similar language contained in each of those Policies, the insurer is to indemnify Duke (i.e., the "INSURED" under the Policies):

> [F]or any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under CONTRACT . . . for damages because of BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE caused by an OCCURRENCE.

(Mann Aff. Ex. L § I(a), ECF No. 591.12.)

9.   "Ultimate net loss" is defined, in relevant part, as:

> [A]ll sums which the INSURED shall become legally obligated to pay as damages either by adjudication or compromise with the consent of the COMPANY, after making proper deductions for all recoveries and salvages collectible and for other insurance that is in excess of the UNDERLYING LIMITS[.]

(Mann Aff. Ex. L § III(n)(1).)

10.  The parties dispute whether CAMA's requirement that Duke take remedial action at Riverbend is a legal obligation imposed "by adjudication or compromise" within the "ultimate net loss" definition and thus whether Duke's remediation costs pursuant to CAMA's legislative mandate is covered under the Policies.

---

[5] The Policies at issue on this Motion are identified in the attached Appendix A. (*See* Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station 1, ECF No. 588; Mann Aff. Exs. G–M, ECF Nos. 591.7–.13.)

11. After full briefing, the Court held a hearing on the Motion on March 12, 2020 (the "Hearing"), at which Duke, the AEGIS Defendants, and other appearing Defendants were represented by counsel. At the Hearing, Duke argued that the AEGIS Defendants raised new arguments in their reply brief to which Duke did not have an adequate opportunity to respond. The Court permitted Duke to respond to these arguments at the Hearing and to file a sur-reply to more fully present its arguments for the Court's consideration. Duke filed its sur-reply on March 23, 2020. (ECF No. 723.)

12. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

13. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *CSX Transp., Inc. v. City of Fayetteville*, 247 N.C. App. 517, 521, 785 S.E.2d 760, 763 (2016) (quoting *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . and means more than a scintilla or a permissible inference[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146

(2002) (citations and internal quotation marks omitted). The Court views evidence in the light most favorable to the nonmoving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

14. The moving party bears the burden of showing that there is no genuine issue of material fact, *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002), and may meet this burden by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim[,]" *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 (citations omitted). If the moving party meets its burden, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000); *see also* N.C. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.").

III.

ANALYSIS[6]

15. The AEGIS Defendants' argument for dismissal on summary judgment is straightforward. As succinctly stated in their reply: "The ULTIMATE NET LOSS

---

[6] The AEGIS Defendants have asserted a timeliness objection to the Court's consideration of the information contained in Tabs 8 (pages from AEGIS Policy No. XL5128602P), 10 (Report

definition in the AEGIS [Defs.'] policies restricts coverage to liabilities incurred by either 'adjudication or compromise.' Duke's obligation to excavate [CCRs] at Riverbend arose from neither, but rather from a direct legislative mandate." (Reply Br. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station 1 [hereinafter "AEGIS Defs.' Reply Br."], ECF No. 712.) Contending that a "legislative mandate" is not an "adjudication" or a "compromise" as a matter of law, the AEGIS Defendants argue that the CCR remediation costs imposed on Duke through CAMA are not covered under the Policies and therefore that Duke's claim as to Riverbend must be dismissed. (AEGIS Defs.' Supp. Br. 5.) After careful consideration, the Court disagrees.

16. As an initial matter, "[a]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990) (citing *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)). The Supreme Court of North Carolina has recently articulated the relevant standards for the interpretation and construction of an insurance policy:

> When interpreting an insurance policy, courts apply general contract interpretation rules. *See, e.g.*, *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). "As in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the

of Jeffrey W. Stempel), and 13 (Expert Report of John C. Evans) of the demonstratives notebook Duke tendered to the Court at the Hearing. The Court finds it unnecessary to consider any of the challenged exhibits in resolving the Motion and, therefore, in the exercise of its discretion, sustains the AEGIS Defendants' objection to these three demonstratives and does not consider them on the Motion.

policy was issued." *Id.* at 354, 172 S.E.2d at 522 (citing *McDowell Motor Co. v. N.Y. Underwriters Ins. Co.*, 233 N.C. 251, 63 S.E.2d 538 (1951); *Kirkley v. Merrimack Mut. Fire Ins. Co.*, 232 N.C. 292, 59 S.E.2d 629 (1950)). In North Carolina, determining the meaning of language in an insurance policy presents a question of law for the Court. *Id.*

When interpreting the relevant provisions of the insurance policy at issue, North Carolina courts have long held that any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary. *Id.* If a court finds that no ambiguity exists, however, the court must construe the document according to its terms. *Id.* (citing *Williams v. Nationwide Mut. Ins. Co.*, 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967)).

Ambiguity is not established by the mere fact that the insured asserts an understanding of the policy that differs from that of the insurance company. *Wachovia Bank & Tr. Co.*, 276 N.C. at 354, 172 S.E.2d at 522. Rather, ambiguity exists if, in the opinion of the court, the language is "fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* The court may not remake the policy or "impose liability upon the company which it did not assume and for which the policyholder did not pay." *Id.*

If the policy contains a definition of a term, the court applies that meaning unless the context requires otherwise. *Id.* However, if the policy fails to define a term, the court must define the term in a manner that is consistent with the context in which the term is used, and the meaning accorded to it in ordinary speech. *Id.* (citing *Peirson v. Am. Hardware Mut. Ins. Co.*, 249 N.C. 580, 107 S.E.2d 137 (1959)).

*Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454, 456–57 (2020).

17. Our Supreme Court has further explained that "[t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *C. D. Spangler Constr.*, 326 N.C. at 142, 388 S.E.2d at 563 (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364

N.C. 1, 9, 692 S.E.2d 605, 612 (2010) (same). In sum, the "intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts[.]" *Cowell v. Gaston Cty.*, 190 N.C. App. 743, 746, 660 S.E.2d 915, 918 (2008) (quoting *McDowell Motor Co.*, 233 N.C. at 253, 63 S.E.2d at 540). "[A] contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean[.]" *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978).

18. Here, the policy language states, in relevant part, that the AEGIS Defendants will indemnify "any and all sums" which Duke "shall become legally obligated to pay *as ULTIMATE NET LOSS* by reason of the liability imposed upon [Duke] by law or liability assumed by [Duke] under CONTRACT . . . for damages[.]" (Mann Aff. Ex. L § I(a) (emphasis added).) "Ultimate net loss" is defined as "all sums" which Duke "shall become legally obligated to pay as damages *either by adjudication or compromise*[.]" (Mann Aff. Ex. L § III(n)(1) (emphasis added).) The Policies do not define the phrase "either by adjudication or compromise" or the specific words "adjudication" and "compromise."

19. Relying on various dictionary definitions of "adjudication" and "compromise" in use at the time the Policies were issued,[7] the AEGIS Defendants contend that an "adjudication" requires an adjudicatory proceeding and a "compromise" refers to two sides settling a matter through mutual concessions, neither of which occurred here.

---

[7] *See The American Heritage Dictionary* 79, 303 (2d College ed. 1982); *The American Heritage Desk Dictionary* 13, 214 (1981); *Webster's New Collegiate Dictionary* 15, 232 (1977); *Webster's New Collegiate Dictionary* 15, 230 (1979). (ECF Nos. 591.14–.17.)

(AEGIS Defs.' Supp. Br. 9.) As further support for their position that no compromise occurred, the AEGIS Defendants argue that a 2014 letter from Duke's CEO Lynn Good to then-North Carolina Governor Pat McCrory and three pre-CAMA rate case documents demonstrate that before CAMA was passed Duke intended to take the actions CAMA later required; hence, no "compromise" was reached.[8] (AEGIS Defs.' Supp. Br. 13–17; Mann Aff. Exs. C, T–V, ECF No. 591.3, 591.20–.22.)

20. In opposition, Duke relies on different dictionary definitions of the same terms,[9] including those defining "adjudicate" as "to pass judgment on" and defining "compromise" as "to adjust or settle by partial mutual relinquishment of principles, position, or claims."[10] More persuasively, Duke further contends that the phrase "either by adjudication or compromise" expansively "describes the broad spectrum of

---

[8] The AEGIS Defendants' latter argument fails based on the evidence. Although the AEGIS Defendants contend that Good's letter committed Duke to close the Riverbend ash basins, (AEGIS Defs.' Supp. Br. 4), that letter's language only provided "recommendations for near-term and longer-term actions at [Duke's] ash basins in North Carolina[,]" (Mann Aff. Ex. C Letter Lynn Good to Governor Pat McCrory, dated March 12, 2014, ECF No. 591.3). Duke's witnesses similarly testified that the letter reflected recommendations, not binding commitments. (*See* Duke's Opp'n Br. Ex. 9 Excerpts Dep. Tr. – Lynn Jones Good Jan. 14, 2020, at 100:6–16, ECF No. 670.1; Duke's Opp'n Br. Ex. 10 Excerpts Dep. Tr. – John H. Elnitsky, II Jan. 8, 2020, at 155:6–19, ECF No. 670.1; Duke's Opp'n Br. Ex. 11 Excerpts Dep. Tr. – David B. Fountain Nov. 15, 2019, at 204:20–205:8, ECF No. 670.1.) In addition, while Duke's pre-CAMA rate case statements may evidence an intent to close its ash basins at some undetermined time, they do not suggest an intention to take the specific remedial action required under CAMA—i.e., excavation.

[9] *See The Random House Dictionary of the English Language* (1973); *Webster's Third New International Dictionary of the English Language Unabridged* (1986). (ECF No. 670.2.) Duke also relies upon a definition in the current version of the Merriam-Webster Online Dictionary, but the Court disregards that definition because Duke has not offered evidence that this definition was in use at the time the Policies were issued.

[10] (*See* Duke's Opp'n Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station 12–13 [hereinafter "Duke's Opp'n Br."], ECF No. 670.)

legal liabilities the insurer promised to pay—from compromise, at one end of the spectrum, to adjudication, at the other" and is not intended to limit the insurer's broad agreement to indemnify to only two specific sources of legal liability. (Duke's Opp'n Br. 7–10.)

21. The AEGIS Defendants' construction has obvious appeal when "adjudication" and "compromise" are considered as standalone terms and their standard dictionary definitions are applied. *See C. D. Spangler Constr.*, 326 N.C. at 152, 388 S.E.2d at 568 ("[T]his Court has used standard, nonlegal dictionaries as a guide." (internal quotation marks omitted)). Perhaps recognizing that appeal, Duke does not argue that the passage of CAMA alone was an "adjudication" or "compromise"[11] under the Policies, (Mar. 12, 2020 Hearing Tr. 164:23–165:8, ECF No. 749; Duke's Opp'n Br. 22–23), and it is undisputed that CAMA's passage was not procured through an adjudicatory proceeding or a settlement of competing claims. That alone, however, does not resolve the Motion as the AEGIS Defendants contend.

22. To the contrary, as Duke correctly notes, under North Carolina law, an insurance contract "must be interpreted as a whole, and individual provisions within a[n insurance] contract must be interpreted within the context of the entire contract." *Fulford v. Jenkins*, 195 N.C. App. 402, 408, 672 S.E.2d 759, 763 (2009); *see also State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) ("Intent is derived not from a particular contractual term but from the contract as a whole.").

---

[11] Rather, Duke contends that its legal obligations arose from the passage of CAMA and its implementation by the North Carolina Department of Environmental Quality ("DEQ"). Duke argues that CAMA's implementation constituted an "adjudication" or "compromise" under the "ultimate net loss" definition in the Policies. (Duke's Opp'n Br. 22–23.)

23. Here, the Court finds Duke's construction reasonable and concludes that the phrase "either by adjudication or compromise," read in the context of the definition of "ultimate net loss" and within the Policies as a whole, may be understood by a reasonable person in the position of an insured as describing the entire range of legal liabilities involuntarily imposed on the insured and not as a limitation on coverage to only those legal actions that may be termed either an "adjudication" or a "compromise." As a result, although Duke's legal liability was legislatively imposed through CAMA rather than through an adversarial court or dispute resolution process, a reasonable insured could understand that the Policies' broad insuring agreement to pay "all sums which the INSURED shall become legally obligated to pay . . . for damages" included an obligation to pay all legally coerced damages and that the phrase "by either adjudication or compromise" was not intended to limit the sources from which legally coerced damages could be imposed to obtain coverage.

24. This construction finds support in the Supreme Court of North Carolina's decision in *C. D. Spangler Construction Co.* In that case, which involved standard-form language, the insurer agreed to "defend any suit against the insured seeking damages on account of . . . property damage[.]" *C. D. Spangler Constr.*, 326 N.C. at 153, 388 S.E.2d at 569 (emphasis omitted). In seeking to avoid a duty to defend, the insurer argued that agency actions requiring cleanup of hazardous waste were not "suits," *id.*, and that state-ordered environmental cleanup costs were not "damages," *id.* at 146–7, 388 S.E.2d at 565. Relying on broad dictionary definitions of these nontechnical terms, the Supreme Court disagreed, rejecting the insurer's narrow

construction that a "suit" must be limited to a "court proceeding," *id.* at 154–55, 388 S.E.2d at 570, and that the term "damages" includes only "compensation recovered by a third party in an action at law for injuries sustained by the third party at the hands of the insured[,]" *id.* at 147, 151–52, 388 S.E.2d at 565, 568–69. The Court emphasized that if the insurer intended the narrow readings it sought, "it should have so indicated in the policy[,]" *id.* at 151, 388 S.E.2d at 568, and concluded that, based on its review of the policy as a whole, each term could be understood by a reasonable insured to include state-ordered environmental cleanup costs, *id.* at 152, 388 S.E.2d at 569.

25.     Similarly here, the phrase "by adjudication or compromise" need not be read as narrowly as the AEGIS Defendants contend. Indeed, the phrase appears in the "ultimate net loss" definition—a term focused on the calculation of the amount payable for qualifying occurrences rather than the scope of coverage in the first instance—and identifies what a reasonable insured could fairly understand are opposite ends of the spectrum of the ways an involuntary obligation to pay money could be legally imposed. Read in context[12] and within the Policies as a whole, the phrase could be understood by a reasonable insured at the time the Policies were issued as expressing the full range of possible sources of legally imposed liability, not as a binary choice excluding other unnamed but contemplated sources of legal liability.

---

[12] *See Woods*, 295 N.C. at 506, 246 S.E.2d at 777 ("If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended.").

26.     If the AEGIS Defendants intended to limit their coverage obligation to exclude governmental mandates like CAMA, they should have done so expressly and not attempt now to use the "ultimate net loss" definition as their instrument to purportedly restrict coverage. *See C. D. Spangler Constr.*, 326 N.C. at 152–53, 388 S.E.2d at 569 ("When an insurance company, in drafting its policy of insurance, uses a 'slippery' word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term." Rather, "[a]ll who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection." (quoting *Ins. Co. v. Ins. Co.*, 266 N.C. 430, 437–38, 146 S.E.2d 410, 416 (1966))).

27.     Decisions from other jurisdictions endorsing coverage for non-judicially-imposed environmental cleanup costs provide further support for this construction. *See, e.g.*, *Cent. Ill. Light Co. v. Home Ins. Co.*, 795 N.E.2d 412, 422–24 (Ill. App. Ct. 2003) (rejecting contention that "ultimate net loss" provision's reference to "adjudication or compromise" narrowed coverage obligation and finding coverage for environmental cleanup costs arising under statutory obligations and administrative agency negotiations), *aff'd*, 821 N.E.2d 206 (Ill. 2004); *see also, e.g.*, *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 507–09 (Mo. 1997) (refusing to exclude equitable relief from "damages" under policy with "adjudication or compromise" clause in "ultimate net loss" provision); *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 510, 516 (Wash. 1990) (refusing to limit "damages" to legal damages imposed by

a court under policy with "adjudication or compromise" clause in "ultimate net loss" provision).[13]

28. Accordingly, the Court concludes that the phrase "by adjudication or compromise" in the "ultimate net loss" definition in the Policies is "fairly and reasonably susceptible to either of the constructions for which the parties contend[,]" rendering the phrase and definition ambiguous. *Wachovia Bank & Tr.*, 276 N.C. at 354, 172 S.E.2d at 522.

29. Where, as here, policy language is ambiguous, our Supreme Court implements the following rules of construction:

> This Court resolves any ambiguity in the words of an insurance policy against the insurance company. We do so because the insurance company is the party that selected the words used. Furthermore, this Court construe[s] liberally insurance policy provisions that extend coverage so as to provide coverage, whenever possible by reasonable construction, and we strictly construe against an insurance company those provisions excluding coverage under an insurance policy[.]

*Buzz Off Insect Shield*, 364 N.C. at 9–10, 692 S.E.2d at 612 (citations and internal quotation marks omitted). The parties vigorously dispute whether Duke should have the benefit of these rules of construction here.[14]

---

[13] The only case advanced by the AEGIS Defendants for their construction of the disputed policy language is *Plantation Pipe Line Co. v. Associated Electric & Gas Insurance Services Ltd.*, CIVIL ACTION NO. 1:09-CV-1260-SCJ, 2011 U.S. Dist. LEXIS 160367, at *22 (N.D. Ga. Dec. 2, 2011). The case is of limited relevance, however, because the federal court there concluded only that the plaintiff had not shown as a matter of law that its voluntary, agency-supervised environmental cleanup efforts were a "compromise" under the AEGIS policy at issue. *See id.*

[14] Duke strongly objects to the AEGIS Defendants' introduction of new affidavits and extrinsic evidence concerning the drafting of the Policies in light of Defendants' refusal to produce any such evidence during discovery on relevance grounds and the Court's earlier conclusion in this litigation that "[i]f the policies are held to be ambiguous, ambiguity will be construed in favor of coverage, and thus [in] Duke's favor, where possible. Defendants'

30.     Duke contends that it should, arguing that all of the evidence shows that the Policies were standard-form insurance agreements drafted or adopted by the AEGIS Defendants without participation or input from Duke.  The AEGIS Defendants contend otherwise, arguing that the Policies do not contain "standard-form insurance industry language" and, relying on *Joyner v. Adams*, 87 N.C. App. 570, 577, 361 S.E.2d 902, 905–06 (1987), and *Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552, 555 (E.D.N.C. 2000), that Duke is a sophisticated policyholder that had an opportunity to provide input regarding the AEGIS policy form at annual policyholder workshops, precluding application of the rule of construction construing policy language against the insurer as drafter and in favor of the policyholder, (AEGIS Defs.' Supp. Br. 17–18; AEGIS Defs.' Reply Br. 11–13).

31.     The Court finds the AEGIS Defendants' contentions without legal or factual support.  First, the AEGIS Defendants' reliance on *Joyner* and *Fountain* is unpersuasive.  In *Joyner*, a case outside the insurance context, the court declined to construe contractual language against either party where (i) the parties "were at arm's length and were equally sophisticated," (ii) the record showed that the parties

---

previous interpretations of these provisions is not relevant to the Court's determination of ambiguity or, if necessary, the Court's subsequent construction of the policy." (Sur-Reply Br. Opp'n Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station 8–11, ECF No. 723 (quoting *Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 2018 NCBC LEXIS 54, at *22 (N.C. Super. Ct. June 4, 2018)).)  Although the Court is sympathetic to Duke's objection, the Court overrules Duke's objection solely for the purposes of this Motion, because, as explained in the text, the new evidence, even if considered, does not support the AEGIS Defendants' contention that the rule of construction construing policy language against the insurer is not properly applied on the facts here.

had "bargained from essentially equal positions of power" and had participated in a "fairly protracted negotiation process" with the provision at issue "undergoing particular scrutiny[,]" and (iii) "[n]othing in the record" established that one party had drafted the language but instead, "the language was assented to by parties who had both the knowledge to understand its import and the bargaining power to alter it." 87 N.C. App. at 577, 361 S.E.2d at 906. Similarly, in *Fountain*, a decision in which the trial court declined to construe policy language against the insurer but which no North Carolina state court has ever cited, the policy at issue had been actively negotiated by the insured, the individual negotiators were identified, and there was unrebutted testimony that "no part of the policy was non-negotiable." 119 F. Supp. 2d at 555.

32. In contrast to *Joyner* and *Fountain*, the AEGIS Defendants have failed to offer evidence showing that Duke actively negotiated the Policies here, including specifically the policy provisions at issue on the Motion. At most, the AEGIS Defendants' evidence shows that (i) in 1980 Duke requested that certain unrelated language in one policy remain the same when the insurer changed from AEGIS to ACI, (ii) a Duke representative attended an annual policyholder meeting in 1981 where unrelated policy provisions may have been discussed at a workshop the Duke representative may have attended, and (iii) a Duke senior executive served on AEGIS's Board of Directors at some unspecified time.[15]

---

[15] (*See* Aff. Greg E. Mann Supp. Reply Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage Riverbend Steam Station Exs. E, F, G, ECF Nos. 713.5–.7; Aff. George Keefe Supp. Defs.' Mot. Partial Summ. J. Regarding Coverage Riverbend Steam Station ¶ 6, ECF No. 715;

33.    None of this purported evidence shows that Duke had any role, much less an active role, in negotiating the Policies or, in particular, the specific policy language relating to ultimate net loss that is at issue on the Motion.  To the contrary, the undisputed evidence shows that the policy language at issue on the Motion was drafted by others in the insurance industry[16] and included in the Policies by the AEGIS Defendants without participation or input from Duke.[17]

34.    Accordingly, the AEGIS Defendants' effort to avoid North Carolina's rules of construction for ambiguous insurance policies fails.  *See, e.g.*, *Newport Assocs. Dev. Co. v. Travelers Indem. Co.*, 162 F.3d 789, 794 (3d Cir. 1998) ("The dispositive question is not whether the insured is a sophisticated corporate entity, but rather whether the insurance contract is negotiated, jointly drafted or drafted by the insured." (quoting *Pittston Co. v. Allianz Ins. Co.*, 124 F.3d 508, 521 (3d Cir. 1997)); *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1265 (Cal. 1990) (construing policy against insurer even though the insured "unquestionably possesse[d] both legal

---

Aff. Frank Tierney Supp. Defs.' Mot. Partial Summ. J. Regarding Coverage Riverbend Steam Station ¶ 8, ECF No. 714.)

[16] *See, e.g.*, Robert Benjamin Berry, *Umbrella Liability Insurance* Appendices G–H (1961) (reproducing 1958 and 1959 Continental Casualty Company form policies); Yvonne R. Paretzky, *Guide to the London Insurance Market* 191 (1988) (reflecting presence of "adjudication or compromise" clause in London form policies from 1971).  (*See* ECF No. 670.1; *see also* ECF Nos. 591.7–.13.)

[17] (*See* Duke's Opp'n Br. Ex. 1 Excerpts Resps. & Objs. Def. TIG Ins. Co. (Successor to Ranger) Pls.' First Set Joint Interrogs. All Def. Insurers 6, ECF No. 670.1 ("Ranger states that it has no present contention as to whether or not DUKE drafted or provided any of the wording of the RANGER POLICIES."); Duke's Opp'n Br. Ex. 2 Excerpts AEGIS's Resps. & Objs. Pls.' First Set Joint Interrogs. All Def. Insurers 7, ECF No. 670.1 (same, as to AEGIS); Duke's Opp'n Br. Ex. 3 Excerpts Resps. & Objs. Def. Berkshire Hathaway Direct Ins. Co. (f/k/a ACI) Pls.' First Set Joint Interrogs. All Def. Insurers 6, ECF No. 670.1 (same, as to ACI).)

sophistication and substantial bargaining power" because there was "no evidence suggesting that the provisions in question were actually negotiated or jointly drafted"); *see also, e.g.*, *Jefferson Block 24 Oil & Gas, L.L.C. v. Aspen Ins. UK Ltd.*, 652 F.3d 584, 598–99 (5th Cir. 2011) (construing policy against insurer under New York law where insured did not draft or dictate the terms of the policy); *Boeing*, 784 P.2d at 514 (applying non-technical meaning of term even though the insured was "a corporate giant" because the "critical fact remains that the policy in question is a standard form policy prepared by the company's experts, with language selected by the insurer" that "was not negotiated").

35. As a result, the Court concludes, on the undisputed evidence of record here, that the phrase "by adjudication or compromise" in the "ultimate net loss" definition in the Policies should be construed in favor of coverage for Duke's covered remediation costs incurred at Riverbend pursuant to CAMA's legislative mandate. *See, e.g.*, *Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 130 N.C. App. 279, 281, 502 S.E.2d 626, 628 (1998) ("[W]herever possible, the [insurance] policy will be interpreted in a manner which gives, but never takes away, coverage." (internal quotation marks omitted)).

36. Based on the above, the Court therefore concludes that the AEGIS Defendants have failed to show that Duke's closure costs for Riverbend are not "ultimate net loss" under the Policies as a matter of law, requiring denial of the Motion.[18]

---

[18] In light of the Court's conclusion, the Court need not address Duke's further contention that Duke's implementation of CAMA under DEQ's supervision and control constituted an

37.     In addition, "Rule 56(c) . . . expressly authorizes the trial court to enter summary judgment if '*any party* is entitled to a judgment as a matter of law.' " *Sullivan v. Pender Cty.*, 196 N.C. App. 726, 731, 676 S.E.2d 69, 72 (2009) (emphasis in original).  "Summary judgment in favor of the non-movant is appropriate when the evidence presented demonstrates that no material issues of fact are in dispute, and the non-movant is entitled to entry of judgment as a matter of law."  *Hartford Fire Ins. Co. v. Pierce*, 127 N.C. App. 123, 124, 489 S.E.2d 179, 179 (1997) (quoting *A-S-P Assocs. v. City of Raleigh,* 298 N.C. 207, 212, 258 S.E.2d 444, 447–48 (1979)); *see, e.g.*, *Elliott v. Enka-Candler Fire & Rescue Dep't, Inc.*, 213 N.C. App. 160, 170, 713 S.E.2d 132, 139 (2011) (noting under Rule 56(c) that "the trial court could have granted plaintiff summary judgment based on the materials presented by defendant, even without plaintiff's motion.").

38.     Accordingly, for the reasons set forth above, the Court further concludes that Duke is entitled to summary judgment determining that the phrase "by adjudication or compromise" in the "ultimate net loss" definition in the Policies shall be construed in favor of coverage for Duke's covered remediation costs incurred at Riverbend pursuant to CAMA's legislative mandate.  *See, e.g.*, *Hartford Fire Ins.*, 127 N.C. App. at 124, 489 S.E.2d at 179 (reversing summary judgment for moving insurer and directing entry of summary judgment for nonmoving insured because ambiguous policy provision at issue "shall be construed in favor of coverage" against insurer who drafted the policy); *see also, e.g.*, *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C.

---

"adjudication or compromise" for purposes of the "ultimate net loss" provision in the Policies. (Duke's Opp'n Br. 22–25.)

697, 711, 412 S.E.2d 318, 326–27 (1992) (ordering reinstatement of judgment for insured because ambiguous exclusion must be construed in favor of coverage); *N.C. Counties Liab. & Prop. Joint Risk Mgmt. Agency v. Curry*, 191 N.C. App. 217, 224, 662 S.E.2d 678, 683 (2008) (remanding for entry of judgment for insured because ambiguous policy provision was required to be construed in favor of coverage); *N.C. Farm Bureau Mut. Ins. Co. v. Briley*, 127 N.C. App. 442, 449, 491 S.E.2d 656, 660 (1997) (affirming summary judgment for insured on same grounds).

IV.

CONCLUSION

39. **WHEREFORE**, the Court, for the reasons stated herein, hereby **DENIES** the AEGIS Defendants' Motion and **GRANTS** summary judgment for Duke determining that the phrase "by adjudication or compromise" in the "ultimate net loss" definition in the Policies shall be construed in favor of coverage for Duke's covered remediation costs incurred at Riverbend pursuant to CAMA's legislative mandate.

**SO ORDERED**, this the 5th day of June, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

# APPENDIX A

## Policies at Issue on the Motion

AEGIS Defendants' Policies[19]

AEGIS Policy No. 172 (ECF No. 591.7)
ACI Policy No. CC-00-12-63 (ECF No. 591.8)
ACI Policy No. CC-00-26-11 (ECF No. 591.9)
Ranger Policy No. BSP 122047 (ECF No. 591.10)
Ranger Policy No. EUL 300658 (ECF No. 591.11)
Ranger Policy No. EUL 300579 (ECF No. 591.12)
AEGIS Policy No. 209CNJ (ECF No. 591.13)

Joining Defendants' Policies

London Guarantee and Accident Company of New York Policy No. LX3278836[20]
London Guarantee and Accident Company of New York Policy No. LX1898119 (Heskin Aff. Ex. 51, ECF No. 578.6)
Royal Indemnity Company Policy No. EC 103320 (Heskin Aff. Ex. 12, ECF No. 578.2)

---

[19] Although the AEGIS Defendants contend, and Duke disputes, that the ACI and Ranger policies at issue are fronting policies for AEGIS and thus AEGIS should be the party-in-interest for those policies, this issue is not currently before the Court for decision. (*See* AEGIS Defs.' Supp. Br. 1 n.1; Duke's Opp'n Br. 2 n.1.)

[20] (*See* Aff. Shane R. Heskin Supp. Defs.' Opp'n Pls.' Mot. Partial Summ. J. Regarding Scope Coverage & Conditional Cross-Mot. Partial Summ. J. Regarding Allocation [hereinafter "Heskin Aff."] Ex. 50, ECF No. 578.5.)