MARGUERITE B. JOYNER v. J. R. ADAMS

No. 8710SC190

(Filed 17 November 1987)

1. **Contracts § 2— lease agreement—rent escalation clause—no meeting of minds**

    In an action for rents allegedly due under a lease, there was evidence to support the trial judge's findings that there had been no meeting of minds on a rent escalation provision.

2. **Appeal and Error § 48; Evidence § 32— rent escalation clause—admission of defendant's testimony on his subjective understanding—no prejudice**

    There was no prejudice in an action for rents allegedly due under a lease from the admission of defendant's testimony on his subjective understanding of a rent escalation provision where the trial judge was sitting without a jury and is presumed to have disregarded any incompetent evidence; there is other

Joyner v. Adams

evidence in the record to support the trial court's finding regarding defendant's intent; plaintiff did not object to the same evidence earlier in the questioning of defendant; and the trial court also admitted evidence by plaintiff of her own subjective intent.

3. **Contracts § 2— rent escalation clause—no findings on issue of whether the parties knew of the other's understanding of disputed language—remanded**

An action for rents allegedly due under an escalation clause in a lease was remanded for findings on the issue of whether the parties knew or had reason to know of the other's understanding of the disputed language. The trial court erred by awarding judgment for plaintiff based on the rule that ambiguity in contract terms must be construed most strongly against the party which drafted the contract where the record revealed that both parties were experienced in the real estate business and bargained from essentially equal positions of power; the parties engaged in a fairly protracted negotiation process, with the provision in question undergoing particular scrutiny; nothing in the record showed that defendant rather than plaintiff drafted the provision; and it appeared that the language was assented to by both parties who had both the knowledge to understand its import and the bargaining power to alter it.

4. **Frauds, Statute of § 8— rent escalation clause in lease agreement—statute of frauds alleged—motion to dismiss denied**

The trial court did not err by not dismissing an action for rents allegedly due under a lease where defendant contended that plaintiff's failure to introduce the Base Lease and 1975 amendment gave him a defense based on the Statute of Frauds, but the parties stipulated to the existence of both documents, their content was undisputed, and defendant never pled the Statute of Frauds as a defense.

APPEAL by defendant from *Smith, Judge.* Judgment entered 1 December 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 24 September 1987.

This is an action for rents allegedly due under the terms of a lease. Plaintiff, Marguerite B. Joyner, owns real property known as Waters Edge Office Park. To develop the property into an office park, plaintiff and her husband, William T. Joyner, Jr., contracted with Brown Investment Company (Brown) in 1972. Brown agreed, under the "Base Lease," to lease the property from plaintiff at an annual rent, increased each year to correspond with the increase in the Wholesale Price Index, published by the United States Department of Labor. The parties contemplated that Brown would remove all existing buildings, regrade the property, prepare an appropriate land plan, and subdivide the area into individual lots. When each lot was subdivided, the lease called for the execution of individual "Lot Leases" to take the place of the

Base Lease. The rent due under the Lot Leases was based, in part, on the occupancy of buildings planned for each lot.

Due to financial difficulties suffered by Brown, the lease was amended in 1975 to substitute defendant, J. R. Adams, as the lessee/developer. The amendment also suspended the annual rent increases. Instead, defendant agreed to pay a fixed rate until 30 September 1980, at which time he was obligated to have subdivided "all of the undeveloped land . . . whereby all portions are deemed lots and eligible for the execution of a [Lot Lease]." If defendant failed to comply with that provision, the amendment required him to pay, retroactively, the amount of rent which would have been due under the terms of the Base Lease. As of 30 September 1980, defendant had executed separate lot leases and had built buildings on all lots except one. Defendant had, however, subdivided the remaining lot, graded it, installed water and sewer lines on it, and built all planned roads and driveways leading to the lot. A building was not built on the lot and a Lot Lease was not executed until late 1982.

Plaintiff filed this action on 27 September 1983, claiming that defendant failed to comply with the requirements of the lease for developing the property and seeking to recover the difference between the actual, fixed rent paid by defendant and the rent recomputed under the terms of the Base Lease. On 5 July 1985, summary judgment was granted for defendant. In an unpublished opinion, this court reversed, holding that the provision of the 1975 amendment relating to the conditions upon which the retroactive rent escalation would occur was ambiguous. Consequently, the case was remanded for a factual determination of the parties' intent.

On remand, the trial court, sitting without a jury, found that plaintiff intended the escalation clause to require defendant to complete, or at least be ready to begin, construction of all buildings planned for the lot. It also found, however, that defendant intended the clause to require only the subdivision of all lots or, at most, whatever development was necessary to prepare the lot for building construction. The court concluded there was "no meeting of the minds" on the question of what conditions would trigger the rent escalation. The court also concluded that, although the parties had different intentions, the ambiguity should be resolved

against defendant, who was "the party that drafted the 1975 amended lease." Accordingly, the court awarded plaintiff damages in the stipulated amount of $93,695.75. Defendant appeals.

*Hunton & Williams, by Julius A. Rousseau, III, for the plaintiff-appellee.*

*Tharrington, Smith & Hargrove by John R. Edwards and Elizabeth F. Kuniholm, for the defendant-appellant.*

EAGLES, Judge.

I

[1] Both parties argue that the trial court erred in concluding that there was no "meeting of the minds" on the rent escalation provision. Each contends that there is no evidentiary basis for finding the other party had a contrary intention. A trial court's findings of fact, however, are conclusive on appeal if supported by competent evidence, *Hill v. Town of Hillsborough,* 48 N.C. App. 553, 269 S.E. 2d 303 (1980), and there is evidence here to support the trial court's findings.

Plaintiff introduced three memoranda written during the negotiation process. One, written to Mr. Joyner by Mr. Mark Lynch, an accountant negotiating on behalf of the Joyners, stated that defendant "would agree" that completion of all buildings within five years would be required to avoid retroactive recomputation of the rent under the Base Lease. The other two memoranda, one written by defendant's negotiator, Mr. Ed Clark, referred to the "completed development" of the property as a possible condition to avoiding rent escalation. Mr. Lynch testified that he and Mr. Joyner interpreted "completed development" to mean the construction of all buildings. In addition, plaintiff testified that she expressed to defendant her wish that the contract contain a more specific provision regarding the construction of buildings on the lots. This evidence is sufficient to support the trial court's finding that plaintiff intended the provision in question to require defendant at least to have begun construction of all buildings on the lots.

Defendant argues that, when read in conjunction with the terms of the Base Lease, his interpretation is the only reasonable interpretation of the rent escalation provision. That argument

was rejected in this court's previous decision in this case. The law of the case is that the language in the amendment is ambiguous and susceptible to more than one reasonable meaning, even when considered with the terms of the Base Lease.

Contrary to plaintiff's contention, there is also evidence that defendant attributed a different meaning to the disputed provision. The evidence indisputably shows that both parties intended the rent escalation clause to require defendant to develop all the property by 30 September 1980. Defendant's evidence showed that, in the local real estate market, a lot is considered "developed" when water and sewer lines are installed and the lot is otherwise ready for the construction of a building. Defendant also established that he was an experienced commercial real estate developer and that Mr. Joyner had personal experience in the real estate business. There is, therefore, competent evidence to support the trial court's finding that defendant intended the provision to require, at most, what he actually accomplished by 30 September 1980.

In arguing that her meaning was the only one intended by the parties, plaintiff specifically cites evidence of her purpose in entering the lease with defendant as well as evidence of the conduct of the parties after the lease was executed. Evidence of the parties' purposes in entering a contract and their conduct after the agreement is some evidence of their intent. *See Century Communications v. Housing Authority of City of Wilson*, 313 N.C. 143, 326 S.E. 2d 261 (1985). However, much of the evidence relied on by plaintiff, as well as other evidence in the record, can support more than one inference. Which among those possible inferences should be deemed credible and worthy of belief is a decision for the trial court. *See Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975). The evidence here does not show, as a matter of law, what effect the parties intended the language in the rent escalation provision to have. Therefore, while the evidence and applicable rules of interpretation would have permitted the trial court to find plaintiff's meaning was intended by both parties, they clearly did not compel that finding. It is not the province of this court to reweigh the evidence.

[2] Plaintiff has also cross-assigned as error the admission of defendant's testimony on his subjective understanding of the provi-

sion, citing its inadmissibility under the rule stated in *Howell v. Smith*, 258 N.C. 150, 128 S.E. 2d 144 (1962). *See also, Root v. Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968); *Citrini v. Goodwin*, 68 N.C. App. 391, 315 S.E. 2d 354 (1984). Plaintiff does not argue its admission was prejudicial error, only that it cannot serve as competent evidence of defendant's intent. Indeed, a trial judge sitting without a jury is presumed to have disregarded any incompetent evidence unless it affirmatively appears otherwise. *See Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590 (1962). There is other evidence in the record to support the trial court's finding regarding defendant's intent. Therefore, any error in the admission of defendant's testimony cannot be held prejudicial. In addition, we note that plaintiff did not object to the same evidence earlier in the questioning of defendant and that the trial court also admitted evidence by plaintiff of her own subjective intent.

## II

[3] It is axiomatic that where parties have attributed different meanings to a term within a contract, there is no "meeting of the minds" on that provision and a court will not enforce either party's meaning. *See O'Grady v. Bank*, 296 N.C. 212, 250 S.E. 2d 587 (1978); *Elliott v. Duke University*, 66 N.C. App. 590, 311 S.E. 2d 632, *disc. rev. denied*, 311 N.C. 754, 321 S.E. 2d 132 (1984); Restatement (Second) of Contracts, sections 20, 201 (1979) (difference must be "material"); *Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F. Supp. 116 (S.D.N.Y. 1960). Consequently, having found divergent meanings between the parties, the trial court did not err in concluding there was no meeting of the minds on the question of what conditions would trigger the retroactive rent escalation.

It is also well-established, although not often enunciated in North Carolina cases, that, where one party knows or has reason to know what the other party means by certain language and the other party does not know or have reason to know of the meaning attached to the disputed language by the first party, the court will enforce the contract in accordance with the innocent party's meaning. *See Insurance Agency v. Leasing Corp.*, 31 N.C. App. 490, 229 S.E. 2d 697 (1976); Restatement (Second) of Contracts, sections 20, 201(2) (1979); 3 Corbin, Contracts, section 537 (1960

and Supp. 1984). In fact, it seems that a determination of whether either or both parties knew or had reason to know of a different meaning attributed by the other is essential in almost every case where the court finds a lack of mutual assent. *Id.* Here, much of the evidence of the negotiations reflects directly on each party's knowledge of what the other party intended the provision to require. Since the trial court failed to make findings of fact on that crucial question, this case must be remanded.

G.S. 1A-1, Rule 52(a) requires the trial court to make specific findings on all facts established by the evidence and essential to support the conclusions of law reached. *Farmers Bank v. Brown Distributors,* 307 N.C. 342, 298 S.E. 2d 357 (1983). When crucial findings of fact are absent from the trial court's judgment, the case must be remanded for further findings. *Rock v. Ballou,* 286 N.C. 99, 209 S.E. 2d 476 (1974). We need not discuss the evidence of the parties' respective knowledge, or reasons to know, of the other's meaning. The question is one of fact, not of law, and it is not generally within the power of an appellate court to determine the weight and credibility of the evidence disclosed in the record. *See Coble v. Coble,* 300 N.C. 708, 268 S.E. 2d 185 (1980).

We note that neither party has specifically assigned as error the sufficiency of the trial court's findings on appeal. However, the purpose of adequate findings is to allow the reviewing court to determine from the record whether the judgment and the conclusions of law underlying it represent a correct application of the law. *Coble v. Coble, supra.* In this case, whether the parties knew or had reason to know of the other's meaning of the disputed language is essential to the proper determination of the contract's enforceability. Accordingly, we remand for findings of fact on that issue.

In remanding, we necessarily find that the trial court erred in awarding judgment for plaintiff based on the rule that ambiguity in contract terms must be construed most strongly against the party which drafted the contract. *See Root v. Insurance Co., supra;* Restatement (Second) of Contracts, section 206 (1979). The rule is essentially one of legal effect, of "construction" rather than "interpretation," since "it can scarcely be said to be designed to ascertain the meanings attached by the parties." Farnsworth, Contracts, section 7.11, page 500 (1982). The rule's

application rests on a public policy theory that the party who *chose* the word is more likely to have provided more carefully for the protection of his own interests, is more likely to have had reason to know of uncertainties, and may have even left the meaning deliberately obscure. *Id.*; Restatement (Second) of Contracts, section 206, comment a (1979); 3 Corbin, *supra*, section 559. Consequently, the rule is usually applied in cases involving an adhesion contract or where one party is in a stronger bargaining position, although it is not necessarily limited to those situations. *Id.* In this case, where the parties were at arm's length and were equally sophisticated, we believe the rule was improvidently invoked.

Before this rule of construction should be applied, the record should affirmatively show that "the form of expression in words was actually chosen by one [party] rather than by the other." 3 Corbin *supra*, section 559 at 266. The only evidence admitted regarding who drafted the 1975 amendment is Mr. Joyner's testimony that no one in his law firm had anything to do with it. Even assuming this is sufficient to support an inference that defendant or his agent wrote the provision, it does not establish that defendant can be charged with having chosen its language.

The record reveals that both parties are experienced in the real estate business and that they bargained from essentially equal positions of power. The record also shows the parties engaged in a fairly protracted negotiation process, with the provision in question undergoing particular scrutiny. Nothing in the record shows that it was defendant, rather than plaintiff, who "drafted" the provision. Instead, it appears that the language was assented to by parties who had both the knowledge to understand its import and the bargaining power to alter it. Therefore, the policy behind the rule is not served in its application here and the trial court erred in using the rule to award judgment for plaintiff.

[4] Defendant's alternate argument that the trial court should have granted his motion to dismiss is without merit. Defendant contends plaintiff's failure to introduce the Base Lease and 1975 amendment into evidence gives him a defense based on the Statute of Frauds. We disagree. The parties stipulated to the existence of both documents, and their content is undisputed. Moreover, defendant never pled the Statute of Frauds as a

defense and, therefore, is barred from raising it here. *See Yeager v. Dobbins*, 252 N.C. 824, 114 S.E. 2d 820 (1960). Defendant's contention that certain testimony and "admissions" of plaintiff required dismissal is also without merit.

If, on remand, the trial court finds that defendant knew or had reason to know what meaning plaintiff attached to the disputed terminology and that plaintiff did not know or have reason to know of the meaning attached to the disputed language by defendant, the trial court should conclude that there is a contract as to the plaintiff's meaning. Otherwise, plaintiff's claim does not prevail.

Affirmed in part, reversed and remanded in part.

Judges WELLS and MARTIN concur.