MARGUERITE B. JOYNER v. J. R. ADAMS

No. 8910SC370

(Filed 16 January 1990)

**Landlord and Tenant § 19 (NCI3d) — recomputation of rent — provisions ambiguous — no knowledge by lessee of lessor's intent**

In an action to enforce a recomputation in rental payment amounts for defendant's alleged failure to comply with the lease requirements, the trial court properly granted summary judgment for defendant where the recomputation language was ambiguous; plaintiff contended that defendant must have all buildings completed on her land in order to avoid a retroactive recomputation of rent; but the evidence supported the trial court's determination that defendant did not know or have reason to know plaintiff's "completed building" meaning.

**Am Jur 2d, Landlord and Tenant § 143.**

APPEAL by plaintiff from judgment entered 16 December 1988 by *Judge Coy E. Brewer* in WAKE County Superior Court. Heard in the Court of Appeals 6 November 1989.

*Hunton & Williams, by Julius A. Rousseau, III, for plaintiff-appellant.*

*Tharrington, Smith & Hargrove, by John R. Edwards and Burton Craige, for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals the trial court's entry of judgment for defendant after a non-jury civil trial. Plaintiff is the lessor in a commercial property lease; defendant is the lessee (or tenant). This is the third time this court has reviewed an issue stemming from plaintiff's attempt to enforce a recomputation in rental payment amounts for defendant's alleged failure to comply with the lease requirements.

The record shows that the original (or 'base') lease was executed in 1972 between plaintiff and lessee Brown Investment Company ("Company"), with an initial term of 50 years. At the time the parties executed the lease, the property was divided into several lots, essentially unimproved and undeveloped. The parties' intent was to develop the land as an office park. Pursuant to the lease,

the rental amount that lessee paid to plaintiff was calculated by a percentage of the land tract's worth. Lessee was to develop the land for office buildings. Lessee would then rent the buildings to subtenants. If the property was 'developed' by being ready for construction, lessee would obtain a lot lease from plaintiff, grant a deed of trust in exchange for construction financing, build and lease the building to subtenants. Lessee would then pay plaintiff a percentage of the rents collected from subtenants. The lease provided that the rent on undeveloped property would be recomputed annually by reference to the United States Department of Labor Wholesale Price Index for All Commodities, to compensate for the lack of subtenant rentals. When plaintiff granted lessee a lot lease, the lot was no longer subject to the recomputation provision.

Company developed financial problems, and plaintiff initiated negotiations with defendant about the lease, with defendant succeeding Company as lessee. At the time defendant succeeded Company as lessee, Company had built only on one of plaintiff's lots. Negotiations amended the agreement recomputation provision. After negotiations, defendant and plaintiff executed this provision as part of the amended lease agreement:

> Notwithstanding any provision of Paragraphs 7 and 9 of The Lease, as to all lots which are subdivisions of the undeveloped land and as to which subdivision occurs on or before September 30, 1980, the adjusted cost of each such lot shall be its prorated value of the undeveloped land without any adjustment on account of any increase or decrease in the Wholesale Price Index on or after September 30, 1975. For the purpose of this agreement, the agreed value of the undeveloped land on September 30, 1975, is $235,316.00

> If, however, the Tenant *fails to subdivide all of the undeveloped land* on or before September 30, 1980, *whereby all portions are deemed lots and eligible for the execution of a lease* or leases as set forth in Exhibit B, the rent of the undeveloped land and the rent for all leases of lots subdivided from the undeveloped land between October 1, 1975 and September 30, 1980, shall be recomputed in the manner set forth in The Lease before the amendments contained in this instrument, and such amounts as are due upon the making

of such recomputation shall be paid within 90 days following such recomputation. [Emphasis added.]

Essentially, defendant and plaintiff changed the time for recomputation, deleting the yearly requirement so that defendant had 5 years to 'develop' the property before the recomputation provision operated to change the rental payments. If defendant did not meet the 5-year deadline, his rental payments were recomputed retroactively to the time of execution of the lease.

Plaintiff brought suit in 1983, alleging that "a portion of the undeveloped land as defined in the agreements had not been subdivided into lots" as of 30 September 1980. At the time of suit, defendant had built commercial buildings on all but one of plaintiff's lots. Defendant had filed subdivision plats on the lot at issue, graded it, installed water and sewer lines, and built the planned roads and driveways. As of 30 September 1980, defendant had not requested a lot lease from plaintiff. In 1982, defendant requested a lot lease on the remaining lot and constructed a building on the lot.

The trial court granted summary judgment for defendant. Plaintiff appealed. In an unpublished opinion ("*Joyner I*"), this court determined that the lease agreement language was ambiguous about the conditions meriting recomputation of rental amounts and remanded the action for trial to determine the proper interpretation of the agreement language. At the second non-jury trial, the trial court entered judgment for plaintiff. Defendant appealed. This court reversed and again remanded the case for non-jury trial. *Joyner v. Adams*, 87 N.C. App. 570, 361 S.E.2d 902 (1987) ("*Joyner II*"). This court determined in *Joyner II* that the parties had no 'meeting of the minds' as to what conditions would trigger the recomputation provision. *Id.*, at 575, 361 S.E.2d at 904-05. However, since an enforceable agreement could result from an 'innocent party's' meaning attached to the provision, the court again remanded the case to the trial court for determination of each party's meaning of the disputed language of the recomputation provision. *Id.*, at 575-76, 361 S.E.2d at 905. This court ordered the trial court to find facts on each party's knowledge of what the other party intended the lease agreement recomputation provision to require. *Id.* In summarizing the opinion, this court noted that plaintiff prevails only if the trial court finds that "defendant knew or had reason to know what meaning plaintiff attached to the disputed terminology and that plaintiff did not know or have reason to know of the

meaning attached to the disputed language by defendant." *Id.*, at 578, 361 S.E.2d at 906. Only if plaintiff were the innocent party and defendant had reason to know her meaning could an enforceable agreement result on which plaintiff could recover.

Upon remand the trial court found the following facts and entered these pertinent conclusions of law:

### FINDINGS OF FACT

5. This court finds that defendant did not know or have reason to know what meaning plaintiff attached to the disputed terminology.

6. This court further finds that plaintiff did not know or have reason to know of the meaning attached to the disputed language by defendant.

7. Every physical act necessary for the property to be "ready for construction" had been completed prior to September 30, 1980.

8. Every condition precedent to requesting a lot lease pursuant to the provisions of the agreement had been accomplished by September 30, 1980.

9. Under the terms of the agreement, a lot lease was required before construction could actually begin.

### CONCLUSIONS OF LAW

3. Having found that defendant did not know or have reason to know what meaning plaintiff attached to the disputed terminology, pursuant to the direction of the Court of Appeals, plaintiff's claim does not prevail.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that plaintiff have and recover nothing from defendant.

---

The issues presented are: (I) whether the trial court's findings of fact were supported by the evidence adduced at trial that defendant did not know or have reason to know of plaintiff's meaning of the rental recomputation provision and (II) whether the trial court exceeded its authority in finding as a fact that defendant had complied with the lease provisions.

## JOYNER v. ADAMS

[97 N.C. App. 65 (1990)]

I

The mandate of *Joyner II* required the trial court to determine whether the defendant knew or had reason to know what meaning plaintiff attributed to the conditions in the recomputation provision. *Id.*, at 578, 361 S.E.2d at 906. In reviewing the trial court's finding on this determination, we first must ascertain plaintiff's meaning at the time of negotiations. 3 A. Corbin, *Contracts* § 537 (1971). Plaintiff contends that the agreement required defendant to have actually completed all buildings by 30 September 1980 to avoid the recomputation provision.

Second, we must determine whether defendant knew or had reason to know plaintiff's meaning of the conditions. *Id.* In determining whether defendant had knowledge or reason to know of plaintiff's meaning, the following language guides us:

> it [is] material what a reasonable man in [defendant's] position would have known [under these circumstances]. But observe that it is such a man 'in [defendant's] position' whose hypothetical meaning is given weight, not a reasonable man in vacuo, or a reasonable college professor, or a normal user of English in a different environment.

*Id.*

"If A and B gave different meanings to [ambiguous terminology], we must proceed to determine whether [defendant] knew, or had reason to know, that [plaintiff] gave a particular meaning to the [ambiguous provision] *and* [defendant] *assented in reliance thereon.*" (Emphasis added.) Rephrased, was defendant "reasonably induced by [plaintiff's or by her representatives'] expressings of *agreement*" to believe that he must have all buildings completed "without running counter to other expectations and understandings that were also reasonably induced [by plaintiff?]" *Id.* (Emphasis added.) One of the "chief purposes" of contract law is "to secure the realization of expectations reasonably induced by the expressions of agreement." *Id.*

In this case the trial court found that defendant did not have reason to know plaintiff's 'completed building' meaning. The trial court's finding is binding on this court if the record contains some competent evidence to support the finding. *Lyerly v. Malpass*, 82 N.C. App. 224, 225, 346 S.E.2d 254, 256, *review denied*, 318 N.C. 695, 351 S.E.2d 748 (1987).

We determine that at least four instances of competent evidence exist to support the trial court's finding. First, plaintiff's testimony reveals two versions of her meaning of the conditions triggering the recomputation agreement. Her initial testimony was that 'completed building' was the condition for avoiding recomputation. However, her subsequent testimony was that the condition meant 'completed buildings' *and* tenant occupation of the buildings. Plaintiff also testified about her inexperience and unfamiliarity with commercial real estate transactions.

Second, even if plaintiff did not have more than one meaning, plaintiff's lack of direct communication with defendant during negotiations was insufficient to give defendant reason to know that either version of plaintiff's meaning of the conditions triggering the recomputation provision differed from defendant's meaning. In negotiations, plaintiff did not meet with defendant; she was represented by her husband-attorney and several accountants. Nowhere does the record show that plaintiff's negotiators conveyed either version of plaintiff's meaning to defendant.

The third instance is the lack of evidence that defendant assented to the contract in reliance on a 'completed building' meaning of the recomputation conditions. The record shows that plaintiff's negotiators recommended a 'completed building' clause for the recomputation provision without stating whether it was plaintiff who requested the recommendation. The record also shows that defendant flatly rejected plaintiff's negotiators' recommendation that the agreement recomputation provision include 'completed building' language. Subsequent to defendant's rejection, the record shows that none of plaintiff's negotiators informed defendant that plaintiff knew of defendant's rejection, that plaintiff disagreed with defendant's rejection, or that defendant's rejection was to have no effect.

The fourth instance is defendant's evidence showing that his previous extensive business knowledge and experience with commercial real estate transactions led him to attribute meanings to the recomputation terms 'subdivision,' 'development,' and 'construction' different from plaintiff's meanings. Defendant offered this evidence to show that he did not have reason to know that the recomputation provision should have been understood to include 'completed buildings.'

Based on the record before us, we determine that a reasonable lessee in defendant's position would not have been reasonably in-

J. M. WESTALL & CO. v. WINDSWEPT VIEW OF ASHEVILLE

[97 N.C. App. 71 (1990)]

duced to believe that he must complete all buildings by the recomputation provision deadline. Thus, the trial court properly found that defendant had no knowledge or reason to know plaintiff's meaning that would allow plaintiff to prevail.

II

Plaintiff failed to cite case authority to support her contention that the trial court exceeded its authority in making certain findings of facts and we deem plaintiff's second contention abandoned. *Tindall v. Willis*, 95 N.C. App. 374, 378, 382 S.E.2d 778, 780 (1989).

Affirmed.

Judges BECTON and PHILLIPS concur.