Pender Farm Dev., LLC v. NDCO, LLC, 2020 NCBC 67.

STATE OF NORTH CAROLINA

PENDER COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 446

PENDER FARM DEVELOPMENT,
LLC,

        Plaintiff and
        Counterclaim
        Defendant,

v.

NDCO, LLC,

        Defendant, Counterclaim
        Plaintiff, and Third-
        Party Plaintiff,

v.

RAIFORD TRASK, III,

        Third-Party Defendant.

**ORDER AND OPINION ON MOTION
TO REVISE ORDER AND OPINION
OR IN THE ALTERNATIVE FOR
LEAVE TO FILE SUPPLEMENTAL
PLEADING**

1.     **THIS MATTER** is before the Court on Defendant/Counterclaim Plaintiff and Third-Party Plaintiff NDCO, LLC's ("NDCO") Motion to Revise Order and Opinion or in the Alternative for Leave to File Supplemental Pleading (the "Motion"). (ECF No. 200.)  For the reasons stated below, the Court **DENIES** the Motion.

> *Wyrick Robbins Yates & Ponton LLP, by Benjamin N. Thompson, Samuel A. Slater, and Charles George, for Plaintiff/Counterclaim Defendant Pender Farm Development, LLC and Third-Party Defendant Raiford Trask, III.*

> *Shipman & Wright, LLP, by Gary K. Shipman and James T. Moore, for Defendant/Counterclaim Plaintiff and Third-Party Plaintiff NDCO, LLC.*

Robinson, Judge.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

2.      The Motion requests that the Court, pursuant to North Carolina Rule of Civil Procedure 54(b), revise portions of the Order and Opinion on Cross-Motions for Summary Judgment entered on April 7, 2020 (the "Cross-Motions Order"), *see Pender Farm Dev., LLC v. NDCO, LLC*, 2020 NCBC LEXIS 43 (N.C. Super. Ct. Apr. 7, 2020), and to enter partial summary judgment in NDCO's favor, along with a declaratory judgment that the First Amendment to and Restatement of Operating Agreement of Pender 1164, LLC (the "Amended Operating Agreement" or the "Agreement") is nugatory and void.  Alternatively, the Motion requests leave, pursuant to Rule 15(d), to file a supplemental pleading attached to the Motion ("NDCO's Supplemental Pleading" or the "Supplemental Pleading"), (Ex. A, ECF No. 200.1).

3.      This case has an extensive, complex factual and procedural background that the Court has detailed in its prior rulings.  *See, e.g.*, *Pender Farm*, 2020 NCBC LEXIS 43, at *2–22 (reciting the factual and procedural background relevant to the Court's analysis of the parties' motions for summary judgment); *Pender Farm Dev., LLC v. NDCO, LLC*, 2019 NCBC LEXIS 68, at *12–23 (N.C. Super. Ct. Nov. 6, 2019) (setting forth the material facts existing without substantial controversy).  Therefore, the Court here only recites those portions of the factual and procedural background relevant to the Court's determination of the Motion.

4.      The dispute in this case centers around the development of approximately 1,164 acres of real property located in Pender County, North Carolina (the "Pender 1164 Property" or the "Property"), which is owned by non-party Pender 1164, LLC

("Pender 1164"), a North Carolina limited liability company. *See Pender Farm*, 2020 NCBC LEXIS 43, at \*1–3. Pender 1164's two 50% members are (1) Plaintiff/Counterclaim Defendant Pender Farm Development, LLC ("PFD"), a North Carolina limited liability company formed by Third-Party Defendant Raiford Trask, III ("Trask") (together, "PFD/Trask"); and (2) NDCO, a Colorado limited liability company. *Id.* at \*2–4. The Amended Operating Agreement governs the business relationship between PFD and NDCO. *Id.* at \*2.

5.      In the Cross-Motions Order, the Court considered (1) NDCO's motion for summary judgment on PFD's declaratory judgment claim; (2) NDCO's motion for partial summary judgment on its claims for declaratory judgment, breach of fiduciary duty, breach of contract, constructive fraud, and fraud in the inducement ("NDCO's Counterclaims and Third-Party Claims"); and (3) PFD/Trask's motion for summary judgment on PFD's declaratory judgment claim and NDCO's Counterclaims and Third-Party Claims (together, the "Cross-Motions"). *Id.* at \*23. After carefully reviewing the parties' briefs in support of and in opposition to the Cross-Motions, together with the summary judgment record, and holding a lengthy hearing, the Court concluded that there were genuine issues of material fact as to all claims. *Id.* at \*23–40. As such, the Court denied the Cross-Motions in their entirety. *Id.* at \*40.

6.      Over two months later, on June 18, 2020, NDCO filed the Motion, requesting relief under Rule 54(b) or, alternatively, under Rule 15(d). (Mot. Revise Order & Op. or Alt. Leave File Suppl. Plead., ["Mot. Revise"].) PFD/Trask oppose the Motion. (Pl. & Third Party Def.'s Resp. Opp'n Mot. Revise, ECF No. 202 ["Resp.

Opp'n"].) The Motion has been fully briefed and is now ripe for resolution. The Court elects to rule on the Motion without a hearing as permitted by North Carolina Business Court Rule 7.4. The Court considers the Motion first under Rule 54(b) and then under Rule 15(d).

## II.    RULE 54(b)

7.    Under Rule 54(b), an interlocutory ruling, like the Cross-Motions Order, is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." N.C.G.S. § 1A-1, Rule 54(b). "Rule 54(b) is the source of authority for what litigants typically refer to as 'motions to reconsider.'" *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC*, 250 N.C. App. 791, 798, 794 S.E.2d 535, 539 (2016) (citing *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005)). "Because North Carolina courts have not articulated a standard for reconsideration under Rule 54(b), this Court has regularly sought guidance from analogous federal cases" addressing the similarly worded Federal Rule of Civil Procedure 54(b). *Charlotte Student Hous. DST v. Choate Constr. Co.*, 2019 NCBC LEXIS 21, at *10 (N.C. Super. Ct. Mar. 26, 2019) (citing *Bohn v. Black*, 2018 NCBC LEXIS 50, at *7 (N.C. Super. Ct. May 16, 2018); *W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at *4–5 (N.C. Super. Ct. Oct. 19, 2017)). In doing so, this Court has explained that deciding whether to grant or deny "[a] motion for reconsideration under Rule 54(b) is within the trial court's discretion." *W4 Farms,* 2017 NCBC LEXIS 99, at *5 (citing *Akeva*, 385 F. Supp. 2d at 565; *Ward v. FSC I, LLC*, 2017 NCBC LEXIS 19, at *6 (N.C. Super. Ct. Mar. 7, 2017)).

8.     This Court has summarized the grounds upon which a trial court will generally grant a motion to reconsider an interlocutory order as follows: "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *W4 Farms*, 2017 NCBC LEXIS 99, at *5 (quoting *RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2016 U.S. Dist. LEXIS 74550, at *3–4 (M.D.N.C. June 8, 2016)).  On the other hand, "[a] motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015).  "The limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court.  To allow motions to reconsider offhandedly or routinely would result in an unending motions practice." *Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003) (citation omitted).  As a result, motions for reconsideration are rarely granted.  *See W4 Farms*, 2017 NCBC LEXIS 99, at *5.

9.     With these principles in mind, the Court now turns to the relief sought by NDCO through the Motion.  NDCO asks the Court to revise (reconsider) its Cross-Motions Order by specifically concluding that:

>   a. [Steven] Shuttleworth ["Shuttleworth"], at all times material to this action, was an agent of Trask;
>
>   b. as a matter of law, the Amended Operating Agreement is nugatory and void for indefiniteness because it left material portions open for future agreement;

c. NDCO is entitled to have all remaining Property titled in the name of Pender 1164 be restored to NDCO or its designee in order to prevent unjust enrichment.

(Mot. Revise ¶ 20.)

10. The Court will first consider NDCO's requests pertaining to the Amended Operating Agreement and the Pender 1164 Property (requests b and c above), since these requests relate to the issues stemming from the Amended Operating Agreement, which the Court analyzed first in the Cross-Motions Order. *See Pender Farm*, 2020 NCBC LEXIS 43, at *23–37.

**A. NDCO's Reconsideration Requests Relating to the Amended Operating Agreement and the Pender 1164 Property**

11. In the Cross-Motions Order, the Court determined, in pertinent part, that there was a triable issue of fact concerning whether there had been mutual assent amongst PFD and NDCO when they entered into the Amended Operating Agreement, which cast doubt on the enforceability of the Agreement. *Id.* at *28, *32, *34–35. This determination is the reason NDCO requests a ruling that would invalidate the Agreement and transfer the Pender 1164 Property to NDCO—all as a matter of law.

12. NDCO appears to base its Rule 54(b) arguments on two factors: (1) an intervening development in controlling law; and (2) the need to prevent manifest injustice. (*See* Mem. Supp. Mot. Revise 9–10, ECF No. 201 ["Mem. Supp."].) But the Motion and NDCO's briefing fail to articulate, with any specificity, the factual or legal basis for these two grounds for reconsideration. Instead, NDCO contends that the Court's prior conclusion concerning mutual assent is itself "an 'intervening

development' in this case" and "that it would be manifestly unjust for the [p]arties to continue litigating over a contract that is nugatory and void." (Mem. Supp. 9–10.)

13. NDCO's argument fundamentally misinterprets the standard of review. An intervening development means a change in controlling *case law* that occurred *after* entry of the interlocutory ruling subject to the reconsideration motion. *See Campbell Oil Co. v. AmeriGas Propane, LP*, 2016 NCBC LEXIS 50, at *2–4, *13 (N.C. Super. Ct. July 8, 2016) (revising its prior interlocutory order after the North Carolina Supreme Court abrogated the North Carolina Court of Appeals precedent upon which the interlocutory order had been based); *see also United States v. Duke Energy Corp.*, No. 1:00CV1262, 2014 U.S. Dist. LEXIS 129805, at *9–15 (M.D.N.C. Sep. 17, 2014) (discussing the basis for reconsideration in the context of controlling appellate law). NDCO fails to cite to any contrary North Carolina law treating the interlocutory order subject to the reconsideration as an intervening development itself.

14. NDCO's broad-brush assertion that manifest injustice will result, if the Court does not grant the Motion, fares no better. In the realm of motions for reconsideration, manifest injustice is generally defined as "an error by the court that is direct, obvious, and observable." *RF Micro Devices*, 2016 U.S. Dist. LEXIS 74550, at *6 (citations and internal quotation marks omitted); *see also Window World of Baton Rouge, LLC v. Window World, Inc.*, 2019 NCBC LEXIS 7, at *15–16 (N.C. Super. Ct. Jan. 25, 2019) (applying the same standard).

15.     To the extent that NDCO is arguing the Motion should be granted in order to correct a direct, obvious, and observable error in the Cross-Motions Order,[1] this argument is unpersuasive. NDCO apparently believes that the Court erred in determining that mutual assent is an issue for a jury to decide in this case. According to NDCO, the Cross-Motions Order makes clear that the Amended Operating Agreement is unenforceable as a matter of law for lack of mutual assent, and therefore, "it would be manifestly unjust for the [p]arties to continue litigating over a contract that is nugatory and void." (Mem. Supp. 10.) NDCO goes on to say that "[t]his Court has clearly concluded that neither [p]arty established through their substantial showing the required mutual assent on material terms of the Amended Operating Agreement." (Mem. Supp. 15.) That is not so.

16.     As the Court detailed in the Cross-Motions Order, PFD/Trask and NDCO each "have differing positions as to whether the Amended Operating Agreement gives PFD the right to use [the Property] as collateral to secure a loan to fund the 'Entitlement and Development Services' or whether PFD was to fund these services out-of-pocket and thereafter obtain repayment from lot sales." *Pender Farm*, 2020 NCBC LEXIS 43, at *24. Each side also "submitted substantial evidence in support of their respective interpretations of the Amended Operating Agreement's terms *that potentially implicates* whether the parties had a meeting of the minds when

---

[1] The Court will assume that this is NDCO's argument for purposes of thoroughly explaining why reconsideration is not warranted here. However, it is not clear from NDCO's briefing whether this is, in fact, NDCO's theory, given that NDCO appears to base its Rule 54(b) arguments on the intervening development and manifest injustice grounds for reconsideration, but fails to specifically tailor its arguments to the Rule 54(b) standards that our courts have adopted over the years.

negotiating and executing the Amended Operating Agreement." *Id.* at *31 (emphasis added). And "because whether or not the parties understood that PFD could use the Pender 1164 Property as collateral to secure a development loan goes to the very heart of the formation of Pender 1164 and the parties' contemplation of the Amended Operating Agreement[,]" the Court determined that there was a genuine issue of material fact regarding mutual assent. *Id.* at *32. This was the extent of the Court's ruling on this particular matter. Nowhere in the Cross-Motions Order did this Court conclusively rule as a matter of law that mutual assent of the parties was lacking as to the Amended Operating Agreement, despite NDCO's assertion to the contrary.

17. Instead, consistent with well-established North Carolina law, the Court reserved the issue of mutual assent for a jury to resolve. *See Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995) ("Whether mutual assent has been established and whether a contract was intended between the parties are questions for the trier of fact." (quoting *Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980))).

18. Simply put, there is no manifest injustice here that merits reconsideration. Indeed, the Cross-Motions Order does not contain any direct, obvious, and observable error. NDCO merely misconstrues the Cross-Motions Order, which is not a proper basis for granting a motion for reconsideration. *See Powell v. State Farm Fire & Cas. Co.*, No. 4:16-cv-02795-RBH, 2018 U.S. Dist. LEXIS 82164, at *3–6 (D.S.C. May 16, 2018) (denying a motion to reconsider a prior interlocutory summary judgment order, where the movant "conflate[d]" the nature of the prior order's legal reasoning).

19. In support of its request for a declaratory judgment that the Amended Operating Agreement is void as a matter of law, NDCO also argues that North Carolina law requires the Court to make such a ruling and cites cases where the issue of mutual assent was resolved on summary judgment. (Mem. Supp. 15–16.) This is a new argument by NDCO, not raised in its summary judgment briefing, that the Court has no obligation to consider at this juncture. *See Julianello*, 791 F.3d at 923 ("A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending."). Nor is the Court required to reassess whether granting summary judgment is appropriate when a question of mutual assent arises. *See RELX, Inc. v. Morrow*, 2020 NCBC LEXIS 31, at *3 (N.C. Super. Ct. Mar. 17, 2020) (explaining that "[i]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly" (quoting *Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003))). In any event, the Court notes that leaving the issue of mutual assent for a jury to decide is consistent with North Carolina precedent, as set forth above.

20. To summarize, NDCO falls well short of establishing the presence of any of the three grounds upon which a Rule 54(b) motion to reconsider may properly be granted. As such, NDCO's reconsideration requests relating to the Amended Operating Agreement and the Pender 1164 Property[2] must be denied.

---

[2] Having determined that there are no grounds warranting a declaration that the Amended Operating Agreement is void as a matter of law, the Court sees no need to address NDCO's unjust enrichment arguments, (Mem. Supp. 14–15), which are part of NDCO's request for

21.     The Court could end its analysis regarding these requests here, since NDCO has failed to sufficiently demonstrate why reconsideration of the Cross-Motions Order in this instance is appropriate. However, the Court will address an issue raised by PFD/Trask in their opposition brief to the Motion, as this issue is intertwined with NDCO's above contentions about mutual assent.

22.     PFD/Trask argue that "[t]he existence of a valid contract has been admitted, established, and can be removed from the issues to be tried [in this action]." (Resp. Opp'n 7.) As support for this assertion, PFD/Trask point to the parties' pleadings, namely, PFD's Complaint for Declaratory Relief, (ECF No. 1); NDCO's Answer and Counterclaim, (ECF No. 14); NDCO's Amended Counterclaim and Third Party Complaint, (ECF No. 41); and PFD/Trask's Answer to Amended Counterclaim and Third Party Complaint, (ECF No. 54). These pleadings, PFD/Trask argue, establish that the Amended Operating Agreement is valid as a matter of North Carolina law. (Resp. Opp'n 7–8.) Since PFD/Trask have not filed their own motion for reconsideration on this particular issue, the Court is not required, as part of this Order and Opinion, to accept or reject PFD/Trask's line of reasoning.

23.     For purposes of a thorough analysis, however, the Court has reviewed the pleadings cited by PFD/Trask. At most, these pleadings only establish that the Amended Operating Agreement was "executed" by both PFD and NDCO, but that is not the same as conclusively establishing or admitting that the Amended Operating Agreement is valid and therefore enforceable as a matter of law. *See RLM Communs.,*

rescission of the Agreement and are also arguments that were not raised by NDCO at the summary judgment stage.

*Inc. v. Tusche*n, 66 F. Supp. 3d 681, 687, 690–93 (E.D.N.C. 2014) (determining that a non-compete covenant was unenforceable, under North Carolina law, because the covenant was "executed" after the employee "executed" her original employment contract, and the covenant was not supported by new consideration).

24.     Moreover, PFD/Trask's contention about the supposed admission of the Amended Operating Agreement's validity (and implicitly, the admission of mutual assent) is belied by the parties' competing views throughout this litigation.  From the onset of this dispute, the parties have disagreed about whether, under the Amended Operating Agreement, PFD could use the Pender 1164 Property as collateral to secure a loan to fund the "Entitlement and Development Services" that PFD was responsible for pursuant to the terms of the Agreement. (*See, e.g.*, Order Denying Prelim. Inj. ¶¶ 31, 33, 46, 50, ECF No. 56.)  Indeed, this disagreement is what led to PFD filing its Complaint against NDCO in the first place.  *See Pender Farm*, 2020 NCBC LEXIS 43, at *16–20.  And as the Court explained in the Cross-Motions Order, this dispute "goes to the very heart of the formation of Pender 1164 and the parties' contemplation of the Amended Operating Agreement." *Id.* at *32.

25.     Tellingly, in their Answer to Amended Counterclaim and Third Party Complaint, PFD/Trask responded to one of NDCO's allegations as follows:

> It is further expressly denied that the parties ever had any agreement or understanding whereby Trask or PFD were to pay all of the Entitlement and Development Expenses out-of-pocket without using any of the land to be developed as collateral for a development loan.  All remaining allegations of this Paragraph are denied.

(¶ 132.)

26. Based on this response, the summary judgment record, and the history of this action, it appears to the Court that PFD/Trask have overstated the effect of the parties' pleadings on the issue of mutual assent, an issue that the trier of fact should decide, not this Court.[3] *See Joyner v. Adams*, 87 N.C. App. 570, 573, 361 S.E.2d 902, 903–05 (1987) (affirming a determination by the fact finder, a trial court judge, that there was no meeting of the minds as to a contractual provision, despite both parties arguing on appeal that this was an incorrect determination by the judge).

27. In sum, the Court, in its discretion, determines that reconsideration of the Cross-Motions Order is not necessary as to NDCO's requests concerning the Amended Operating Agreement and the Pender 1164 Property. Further, though not required to do so, the Court has evaluated PFD/Trask's contention that the pleadings in this case conclusively establish the validity of the Amended Operating Agreement as a matter of law. The Court rejects this argument.

**B.    NDCO's Reconsideration Request Regarding Shuttleworth**

28. NDCO also asks, again pursuant to Rule 54(b), that the Cross-Motions Order be "revised to provide that there exists no genuine issue of material fact but that during the periods referenced in this Court's Rule 56(d) Order Shuttleworth was Trask's agent." (Mot. Revise ¶ 6.)

---

[3] Relatedly, both PFD/Trask and NDCO cite to this Court's March 12, 2018 Order Denying Motion for Preliminary Injunction, where the Court stated that "[t]he parties do not dispute that the Amended Operating Agreement is a valid and binding contract." (¶ 42.) But the parties ignore the fact that this statement was made early in the litigation based on a limited factual record and the Court's unequivocal statement in that Order that it was making "findings of fact and conclusions of law for the limited purpose of resolving the Motion, without prejudice to making contrary or different findings and conclusions in subsequent orders." (¶ 10.)

29. To begin with, the Court notes that NDCO makes no attempt at all to argue that any of the three established grounds for reconsideration of an interlocutory order are applicable to this particular request. Instead, NDCO essentially claims that the Court was incorrect in concluding in the Cross-Motions Order that there was a genuine issue of material fact as to whether Shuttleworth was Trask's agent for purposes of NDCO's fraud in the inducement allegations against PFD/Trask. *See Pender Farm*, 2020 NCBC LEXIS 43, at *37–39. It appears to the Court, then, that NDCO is simply asking the Court to re-evaluate what the Court already thought through as part of its consideration of the Cross-Motions: whether the summary judgment record establishes as a matter of law that Shuttleworth was Trask's agent. NDCO's use of a Rule 54(b) motion to reconsider in this fashion is inappropriate. *See RELX*, 2020 NCBC LEXIS 31, at *3.

30. Nevertheless, the Court first directs NDCO's attention, as it previously did in the Cross-Motions Order, to North Carolina law establishing that "[a]gency is a fact to be proved as any other." *Green v. Freeman*, 233 N.C. App. 109, 112, 756 S.E.2d 368, 372 (2014) (quoting *Albertson v. Jones*, 42 N.C. App. 716, 718, 257 S.E.2d 656, 657 (1979)).

31. The Court next reminds NDCO of the undisputed facts in this case regarding the extent of Trask and Shuttleworth's relationship. In connection with its motion for summary judgment, NDCO filed a motion pursuant to North Carolina Rule of Civil Procedure 56(d) (the "Rule 56(d) Motion"), asking the Court to set forth the material facts existing without substantial controversy in this action. *See Pender*

*Farm*, 2019 NCBC LEXIS 68, at *1–2. As part of the Court's consideration of the Rule 56(d) Motion, the parties submitted over 2,500 pages of documents for the Court to review. *Id.* at *11–12. After carefully reviewing these voluminous records, the Court established, as relevant here, the following material facts existing without substantial controversy:

> 37. Trask instructed Shuttleworth to work with the owners of the adjacent 664 acres to incorporate that adjacent 664 acres into the Joint Venture. (Trask Dep. 124:3–12, ECF No. 100.10.)
>
> 38. Shuttleworth sent an email to Mark Holm and Sandy Christian on August 6, 2013, in which Shuttleworth explained his understanding of the concept under which Trask was then operating and attached both a letter addressed to Mark Holm and a "Joint Venture Overview." (Ex. C to NDCO's List of Exhibits, ECF No. 64.3.)
>
> 39. Trask was copied on Shuttleworth's August 6, 2013 email. (Ex. C. to NDCO's List of Exhibits, ECF No. 64.3.)
>
> 41. Trask never made contact with Sandy Christian to correct anything that had been represented by Shuttleworth in his August 6, 2013 email. (Christian Dep. 67:5–8, ECF No. 100.12.)

*Id.* at *16–17. Based on these few undisputed facts relating to Shuttleworth, along with NDCO's other cursory statements about the relationship between Trask and Shuttleworth, (Mem. Supp. 6–7), NDCO invites the Court to conclude as a matter of law that Shuttleworth was Trask's agent at all times relevant to this litigation. But contrary to NDCO's belief, there remains a number of factual questions about the nature of Trask and Shuttleworth's relationship during the relevant time periods for this action, including, as PFD/Trask point out, whether Shuttleworth was truly acting on Trask's behalf during those times or on behalf of Michael Cook, a representative of NDCO. (*See* Resp. Opp'n 12–13.) It would, therefore, be improper

for the Court to declare as a matter of law that Shuttleworth was Trask's agent in connection with NDCO's fraud in the inducement claim against PFD/Trask, especially in the setting of a Rule 54(b) motion to reconsider.

32. Accordingly, reconsideration of the Cross-Motions Order is not warranted here either. The Court next examines the Motion under Rule 15(d).

### III. RULE 15(d)

33. Rule 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which may have happened since the date of the pleading sought to be supplemented[.]" N.C.G.S. § 1A-1, Rule 15(d). Under Rule 15(d), the matters (i.e., transactions, occurrences, or events) contained in a supplemental pleading must be matters that could not have been asserted in the original pleadings, since the supplemental matters allowed by this rule are those arising after the original pleadings were filed. *See McKnight v. McKnight*, 25 N.C. App. 246, 250, 212 S.E.2d 902, 905 (1975).

34. Whether to grant or deny a Rule 15(d) motion is a decision that lies within the trial court's sound discretion. *See Zagaroli v. Neill*, 2017 NCBC LEXIS 103, at *42 (N.C. Super. Ct. Nov. 7, 2017) (citing *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 258, 580 S.E.2d 757, 761 (2003)); *see also Deutsch v. Fisher*, 32 N.C. App. 688, 692, 233 S.E.2d 646, 649 (1977) (explaining that, by its terms, Rule 15(d) "permits but does not require a trial court to allow a supplemental pleading").

35.     "Generally, motions to allow supplemental pleadings should be freely granted unless their allowance would impose a substantial injustice upon the opposing party." *Miller v. Ruth's of N.C., Inc.*, 69 N.C. App. 153, 156, 316 S.E.2d 622, 625 (1984).  This free allowance is "based upon the policy that a party should be protected from the harm which may occur if he is prevented from litigating certain issues merely by virtue of the court's denial of such a motion."  *Van Dooren v. Van Dooren*, 37 N.C. App. 333, 337, 246 S.E.2d 20, 23–24 (1978).  Furthermore, there is no need to consider if there will be substantial injustice imposed on the opposing party in circumstances where there is no basis for permitting a supplemental pleading in the first place.  *See Miller*, 69 N.C. App. at 156–58, 316 S.E.2d at 625–26.

36.     Through the Supplemental Pleading, NDCO seeks to assert an additional affirmative defense that the "Amended Operating Agreement is a nugatory and void for indefiniteness, and . . . [that] NDCO is entitled to a declaratory judgment to that effect and entitled to have any Property conveyed to Pender 1164 restored to it."  (Ex. A, at 1–2.)  NDCO also seeks to supplement its Amended Counterclaim and Third Party Complaint by adding a "SIXTH CLAIM FOR RELIEF (In the alternative: Mistake-Rescission)," which appears to be based on a theory that the parties were mistaken as to how the "Entitlement and Development Expenses" would be paid.  (Ex. A, at 2–5.)

37.     NDCO requests leave to file the Supplemental Pleading in order to "conform the pleadings to the legal issues to which this Court has focused in its [Cross-Motions] Order regarding the enforceability of the Amended Operating Agreement."  (Mem.

Supp. 17.) However, conforming the pleadings to the legal issues discussed in an interlocutory order is not one of the purposes of Rule 15(d).

38. NDCO further contends that the Cross-Motions Order is "clearly an 'occurrence or event' subsequent to any [p]arty's pleading" as defined by Rule 15(d). (Mem. Supp. 17.) Setting aside the fact that this Court is not aware of, and that NDCO has not pointed to, any controlling North Carolina law establishing that a trial court's interlocutory ruling is the type of transaction, occurrence, or event contemplated by Rule 15(d), the bigger problem here is that NDCO has not identified any matters that it could not have otherwise asserted in its original pleadings. As the Court noted in its Cross-Motions Order, the summary judgment record contains evidence that NDCO may have been aware, prior to and after the execution of the Amended Operating Agreement, of PFD's intention to use the Pender 1164 Property as collateral to secure a loan that would fund the costs associated with developing the Property. *See Pender Farm*, 2020 NCBC LEXIS 43, at \*31. Also, in PFD's July 26, 2016 letter declaring a deadlock between PFD and NDCO, which preceded the start of this lawsuit, PFD again communicated to NDCO its belief that the Amended Operating Agreement allowed PFD to use the Property to secure a development loan. (*See* Compl. Ex. F, ECF No. 2.)

39. Thus, NDCO was aware (or should have been aware), before the filing of either its Answer and Counterclaim or its subsequent Amended Counterclaim and Third Party Complaint, that PFD may have had a different interpretation than NDCO about PFD's obligation to fund the "Entitlement and Development Expenses,"

when the parties first entered into the Amended Operating Agreement. Moreover, the parties' disagreement regarding how the "Entitlement and Development Expenses" were going to be paid, a material provision of the Amended Operating Agreement, directly implicates mutual assent. *See Pender Farm*, 2020 NCBC LEXIS 43, at *28. Consequently, the Supplemental Pleading does not identify any matters that NDCO could not have asserted when it filed its original pleadings, since all the assertions set forth in the Supplemental Pleading pertain to mutual assent, one way or the other, and NDCO was put on notice before this action began that there may be issues surrounding mutual assent.

40. Finally, as explained above in the Court's Rule 54(b) analysis, the issue of mutual assent will need to be resolved by the jury at trial, so the parties will have an opportunity to litigate this issue. And therefore, the harm that Rule 15(d) protects against is not a concern here. Further, there is no need to discuss whether PFD/Trask would face substantial injustice by the granting of the Motion, since NDCO has not identified a proper basis for relief under Rule 15(d). The Court thus denies NDCO's alternative request for leave of Court to file the Supplemental Pleading.

## IV. CONCLUSION

41. For the foregoing reasons, the Court hereby **DENIES** the Motion in its entirety.

**SO ORDERED**, this the 25th day of September, 2020.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
for Complex Business Cases